USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/26/2026

B&H FOTO & ELECTRONICS CORP.,

                    Plaintiff,

        -against-

EARTHCAM, INC.,

                    Defendant.

_____

EARTHCAM, INC.,

                    Third-Party Plaintiff,

        -against-

B&H FOTO & ELECTRONICS CORP., *et al.*,

                    Third-Party
                    Defendants.

23-CV-07633 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

This case began as a breach of contract action. Plaintiff is B&H Foto & Electronics Corp. ("B&H"), a camera retailer. Defendant is EarthCam, Inc. ("EarthCam"), a New Jersey-based company. B&H commenced this lawsuit after EarthCam failed to make timely payments to B&H for camera purchases totaling $818,158.95. By way of an answer and then an eventual Second Amended Third-Party Complaint (the "SATPC"), EarthCam responded by counterclaiming and naming eight parties as third-party defendants. Those parties are B&H Photo Video Inc. ("B&H Photo") and a B&H employee named Yosef Leaf (together with B&H "the B&H Parties"); Adorama, Inc. ("Adorama"), Adorama Camera, Inc., and Adorama Shipping, Inc. (together, "the Adorama Parties"); and three individuals named Charles Dilkes, Charles Vincent, and Edwin DeVia. The SATPC also names "John Does 1–100" and "ABC

1

Corporations 1–100." Adorama is, like B&H, a retailer that sold cameras to EarthCam. Dilkes is EarthCam's former Director of Operations and "Vice President of Supply Chain." And Vincent is EarthCam's former Controller. As alleged in the SATPC, for years, Dilkes and Vincent fraudulently placed purchase orders without authorization on EarthCam's behalf to B&H and Adorama. After the cameras arrived, Dilkes would steal the cameras from EarthCam's New Jersey warehouse and sell them to DeVia, who acted as a fence in Vincent and Dilkes' scheme. In the SATPC, EarthCam alleges the B&H Parties and the Adorama Parties acted in concert with Dilkes, Vincent, and DeVia as part of a broader conspiracy aimed at defrauding EarthCam. Currently before the Court are the B&H Parties' and Adorama Parties' motions to dismiss, as well as a letter from DeVia asking to join those motions. For the following reasons, the B&H Parties' motion is GRANTED IN PART and DENIED IN PART, the Adorama Parties' motion is GRANTED IN PART AND DENIED IN PART, and DeVia's letter motion is GRANTED IN PART and DENIED IN PART.

### RELEVANT FACTS AND PROCEDURAL HISTORY[1]

B&H filed its complaint on August 28, 2023, alleging a single count of breach of contract. Dkt. No. 1 ("Complaint"). The Complaint alleges that, on or about November 6, 2019, EarthCam and B&H executed an agreement for the sale of goods (the "Sales Agreement") outlining terms for EarthCam to purchase "photo, computer, software, audio, and video merchandise." *Id.* ¶ 7. Under the Sales Agreement, payment for a B&H invoice becomes due forty-five (45) days after issuance. *Id.* ¶ 10. B&H alleged it sent forty-one (41) invoices to

---

[1] The following facts are taken from B&H's complaint (Dkt. No. 1) and from EarthCam's Second Amended Third-Party Complaint (Dkt. No. 103) and are assumed true solely for purposes of this opinion. The Court refers to the parties' memoranda of law in support and opposition to the motions to dismiss as follows: Dkt. No. 109 ("Adorama Mot."); Dkt. No. 112 ("B&H Mot."); Dkt. No. 119 ("Opp."); Dkt. No. 121 ("Adorama Reply"); and Dkt. No. 122 ("B&H Reply").

2

EarthCam between October 2, 2022, and May 4, 2023, totaling $818,158.95. *Id.* ¶¶ 17–18. After EarthCam failed to pay any of these invoices, B&H filed this lawsuit seeking damages in the amount of its outstanding invoices. The Court has diversity jurisdiction over this action because the amount in controversy exceeds $75,000 and the parties are completely diverse— B&H is a citizen of New York, while EarthCam is a citizen of New Jersey and Delaware.

Two months before this lawsuit began, on June 28, 2023, Adorama filed a breach of contract action against EarthCam in New York County Supreme Court. *Adorama, Inc. v. EarthCam, Inc.*, No. 653107/2023 (Sup. Ct. N.Y. Cnty. June 28, 2023) (the "Adorama Action"), Dkt. No. 1. Like B&H, Adorama asserted EarthCam failed to pay "for goods that EarthCam ordered and received from Adorama." *Id.* ¶ 1. Adorama's complaint alleges breach of contract and seeks damages of $565,500. *Id.*

Turning back to the federal action, EarthCam answered the complaint on April 10, 2024, and asserted counterclaims against B&H and the third-party defendants. Dkt. No. 14. Several amendments to the pleadings culminated in the operative SATPC. The SATPC alleges B&H and the third-party defendants jointly participated in a sprawling conspiracy aimed at defrauding EarthCam, stealing its cameras, and selling stolen cameras to EarthCam, the wider public, and government agencies.

As alleged, Dilkes would generate fraudulent invoices for cameras and transmit them "via mail, facsimile and/or email" to the B&H Parties and Adorama Parties. SATPC ¶ 61. The B&H Parties and Adorama Parties would fill the purchase orders, knowing they were fraudulent, and "knowingly generated invoices for the units of cameras and related merchandise falsely ordered, and mailed, faxed and/or emailed the invoices to EarthCam for payment." *Id.* Vincent would then create "payment runs with EarthCam's accounting system" to facilitate payment of

the false invoices from the B&H Parties and Adorama Parties. *Id.* After the cameras arrived, Dilkes would steal them from EarthCam's New Jersey warehouse and transport them across state lines to DeVia.[2] *Id.* DeVia would purchase the cameras from Dilkes and sell them to the B&H Parties and Adorama Parties, and "upon information and belief, either shipped those purchased stolen cameras" or "transported those stolen cameras across state lines." *Id.* Finally, the B&H Parties and the Adorama Parties would then re-sell the stolen cameras back to EarthCam as well as to the general public and government agencies. *Id.* EarthCam alleges this process involved both mail and wire fraud due to the purchase orders being sent across state lines, and money laundering to disguise the illegal conspiracy. *Id.* ¶¶ 198–210.

As evidence of the B&H Parties' participation in the conspiracy, EarthCam highlights that several invoices from B&H included cameras with the same serial numbers as cameras on previous invoices B&H issued to EarthCam. *See, e.g., id.* ¶ 73. Additionally, EarthCam references a March 15, 2023 email Leaf sent Dilkes stating: "If you can please call me – I need to discuss something related to the access of our account with you." *Id.* ¶ 156. EarthCam terminated Vincent in March 2023, shortly before this email was sent. EarthCam alleges "[t]his email strongly suggests that Leaf was concerned that Vincent could no longer prevent the scheme from being discovered." *Id.* Lastly, EarthCam alleges that the purchase orders it sent to B&H stated all purchase orders were subject to EarthCam's terms and conditions. In turn, the terms and conditions specified that EarthCam only purchased new products. So, in filling the purchase orders, EarthCam alleges B&H represented the cameras were new when, in fact, they were stolen. *Id.* ¶¶ 432–34.

---

[2] EarthCam's facility and DeVia are both in New Jersey. The SATPC does not explain how this trip would involve crossing state lines.

Regarding Adorama, EarthCam cites a March 28, 2023 email from an Adorama employee to Dilkes stating: "Question regarding timing and volume. We initially discussed 50 units per week. With Adorama and B&H being closed from April 6th – 13th in observance of Passover, do you want us to increase the unit volume of these initial orders?" SATPC ¶ 109. EarthCam contends this email shows "that B&H and Adorama were knowingly working together in furtherance of the scheme." *Id.* EarthCam also highlights that Adorama's invoices for camera sales did not list the serial numbers of the cameras, which EarthCam argues is evidence of Adorama's knowing participation in the conspiracy. *Id.* ¶ 88. Next, EarthCam alleges that, at some point after EarthCam initially discovered the scheme, one of its employees contacted an Adorama employee and asked for the serial numbers of all cameras Adorama sold to EarthCam. *Id.* ¶¶ 82–84. The Adorama employee responded that Adorama does not provide camera serial numbers unless a customer asks in advance that such information be included on an invoice. *Id.* ¶¶ 84, 86. EarthCam claims this representation was fraudulent because, in the Adorama Action, Adorama produced the serial numbers of some cameras it sold to EarthCam. *Id.* ¶ 87. EarthCam also alleges Adorama's invoices for cameras were fraudulent because they misrepresented the cameras were new and stated, "this order was carefully processed by your sales representative," which EarthCam alleges is false because "the orders were procured from stolen goods." *Id.* ¶¶ 92–93.

As further evidence of the Adorama Parties' participation in the scheme, EarthCam alleges that some Adorama shipments came in boxes that were the same boxes Dilkes had previously stolen from EarthCam's New Jersey warehouse. *Id.* ¶ 117. Finally, EarthCam cites an April 17, 2023 email from two Adorama employees to an unknown recipient. The email states, "Mr. Tim Pickett," purportedly an Adorama employee, "used to keep a safety stock for us

in your NJ warehouse. Is this still accurate?" *Id.* ¶ 158. EarthCam alleges around April 2023 "Adorama was having a difficult time procuring stolen goods" given Vincent's termination in March 2023 and the "safety stock" referenced in the April 17, 2023 email "is believed to the stock of goods at EarthCam in New Jersey, which was to be stolen and then sold" to the B&H Parties and Adorama Parties "to re-sell those stolen goods." *Id.*

Finally, the SATPC alleges on multiple occasions that B&H and the third-party defendants represented the cameras the B&H Parties and Adorama Parties sold to EarthCam were "new" and "not stolen," but the SATPC nowhere clarifies precisely who made that representation or when. The SATPC does allege that invoices from Adorama claimed Adorama sold only "new" cameras. But excerpts of Adorama invoices in the SATPC lack any such representation.[3]

The SATPC includes fifteen causes of action. They are: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (against all Counterclaim and Third-Party Defendants); (2) conspiracy to violate RICO (against all Counterclaim and Third-Party Defendants); (3) civil conspiracy (against all Counterclaim and Third-Party Defendants); (4) violation of New Jersey's RICO statute (against all Counterclaim and Third-Party Defendants); (5) "common law fraud/fraudulent misrepresentation/fraudulent inducement" (against all Counterclaim and Third-Party Defendants); (6) fraudulent concealment (against all Counterclaim and Third-Party Defendants, except DeVia); (7) aiding and abetting fraud (against

---

[3] Likewise, it is unclear what the SATPC means by "new." As the SATPC describes the alleged scheme (that cameras from B&H and Adorama never left their boxes and were stolen and then re-sold while still in the manufacturer's packaging), the stolen and re-sold cameras would still be "new" cameras by any reasonable ordinary definition. For example, if a customer, finding it had over-ordered, returned cameras that were still in their undisturbed and unopened manufacturer's packaging, certainly B&H or Adorama would be justified in re-selling those cameras as "new." However, the SATPC appears to use "new" as a synonym for "not stolen," with no explanation for that connotation.

6

the B&H Parties, the Adorama Parties, and DeVia); (8) breach of contract (against all Counterclaim and Third-Party Defendants, except Leaf and DeVia); (9) breach of the duty of good faith and fair dealing (against all Counterclaim and Third-Party Defendants, except Leaf and DeVia); (10) breach of fiduciary duty and duty of loyalty (only against Dilkes and Vincent); (11) violation of the New Jersey Consumer Fraud Act (against all Counterclaim and Third-Party Defendants); (12) conversion (against all Counterclaim and Third-Party Defendants); (13) unjust enrichment (against all Counterclaim and Third-Party Defendants); (14) replevin (against all Counterclaim and Third-Party Defendants except the individuals (Dilkes, Vincent, DeVia, and Leaf)); and (15) violation of the New York General Business Law (against all Counterclaim and Third-Party Defendants except Dilkes and Vincent). *See* SATPC ¶¶ 174–535. The SATPC seeks $13,000,000 in damages from B&H and the third-party defendants. *Id.* at 89–98.

The B&H Parties and Adorama Parties both moved to dismiss the SATPC. Dkt. Nos. 108 & 111. The B&H Parties argue each count of the SATPC fails on the merits. The Adorama Parties argue, *inter alia*, the Court should dismiss the RICO counts and—because one of the Adorama Parties is not diverse from EarthCam—the Court should decline to exercise supplemental jurisdiction over the remaining claims against the Adorama Parties. EarthCam filed a letter stating it received documentation indicating Vincent has filed for bankruptcy. Dkt. No. 118.[4] Dilkes has not appeared in this lawsuit. DeVia asked to join the B&H Parties and Adorama Parties' respective motions to dismiss, asserting that their arguments apply equally to him and he should likewise be dismissed. Dkt. No. 114.

---

[4] On March 24, 2026, EarthCam filed a letter stating Vincent pleaded guilty to second-degree theft by deception in New Jersey state court. Dkt. No. 130. EarthCam also relayed that it commenced an adversary proceeding against Vincent "[i]n connection with his Chapter 7 bankruptcy" and a motion for default judgment is currently pending. *Id.*

Finally, the Court notes that, in the Adorama Action, discovery has commenced, the State court judge denied EarthCam's motion to dismiss, and EarthCam filed a counterclaim alleging breach of contract, unjust enrichment, and fraud. *Adorama, Inc. v. EarthCam, Inc.*, No. 653107/2023, Dkt. No. 38 (N.Y. Cnty. Sup. Ct. June 4, 2024).

## DISCUSSION

This Opinion proceeds in two parts. First, the counts alleging violation of RICO (Count One), conspiracy to violate RICO (Count Two), civil conspiracy (Count Three), violation of New Jersey RICO (Count Four), fraud (Counts Five through Seven), breach of duty of good faith and fair dealing (Count Nine), violation of the New Jersey Consumer Fraud Act (Count Eleven), replevin (Count Fourteen), and violation of the New York General Business Law (Count Fifteen) are dismissed for failure to state a claim as to any party named in those counts. Second, the Court assesses whether the joinder of the Adorama Parties was proper under Federal Rules of Civil Procedure 14, 19, and 20.

## I.    LEGAL STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[5] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must assume all well-pled facts to

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

"In alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet Rule 9(b)'s heightened pleading standard, a pleading must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Stated differently, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement." *Wise v. Combe Inc.*, 724 F. Supp. 3d 225, 235 (S.D.N.Y. 2024).

## II.    SUFFICIENCY OF CLAIMS

### A.  Count One – Violation of RICO

Count One of the SATPC alleges B&H and the third-party defendants violated RICO. SATPC ¶¶ 174–254. To state a RICO claim, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more [predicate] acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*, No. 15-CV-03784 (PKC), 2016 WL 6110565, at *4 (S.D.N.Y. Aug. 4, 2016). A pattern of racketeering activity requires a plaintiff to

9

allege two related predicate acts that "amount to, or a pose a threat of, continuing criminal activity." *GICC Capital Corp. v. Tech Fin. Grp.*, 67 F.3d 463, 465 (2d Cir. 1995). In assessing RICO claims, courts must be diligent against attempts by a plaintiff to "federalize garden-variety state common law claims." *Gross v. Waywell*, 628 F. Supp. 2d 475, 483 (S.D.N.Y. 2009).

As predicate acts, EarthCam alleges B&H and the third-party defendants committed numerous acts of wire and mail fraud and money laundering. The Court reviews the wire and mail fraud claims for compliance with Rule 9(b), *Bigsby v. Barclays Capital Real Estate, Inc.*, 170 F. Supp. 3d 568, 575 (S.D.N.Y. 2016), and the money laundering claim under the pleading standard of Rule 8(a), *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 429 (S.D.N.Y. 2007). "The alleged predicate acts of mail and wire fraud merit particular scrutiny" given the possibility they can transform "garden-variety" claims into a federal RICO claim. *Bigsby*, 170 F. Supp. 3d at 575.

EarthCam has failed to adequately allege either mail and wire fraud or money laundering as predicate acts. In support of its wire and mail fraud allegations, EarthCam alleges, "B & H Foto & Electronics Corp., B&H Photo Video Inc, Adorama Camera, Inc.[,] Adorama Inc.[,] and Adorama Shipping., Inc., [sic] would each manage and direct Yosef Leaf, Charles Dilkes, Charles Vincent, and Edwin Devia," who would in turn, either individually or using "John Does 1–100" or "ABC Corporations 1–100," use "the mail and wires to" send and receive purchase orders, invoices, communications, and payments "for the resale of the cameras stolen from EarthCam to the general public and/or governmental agencies, in effect flooding the interstate market with stolen merchandise." SATPC ¶ 203. These allegations fall far short of the particularity that Rule 9(b) requires because they do not offer sufficient details regarding the exact acts EarthCam alleges constituted mail or wire fraud. Furthermore, they fail to distinguish

10

between the multiple entities who EarthCam alleges, without differentiation, were all managing and directing four different individuals. "Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)." *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 517 (W.D.N.Y. 2007) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91-CV-02923, 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994)); *see id.* at 515–19 (collecting cases). EarthCam's other purported examples of wire and mail fraud fare no better. *See, e.g.*, SATPC ¶ 205 ("For instance, and upon information and belief, the wire fraud occurred when B&H Foto & Electronic Corp., BH Photo Video Inc, Adorama Camera, Inc., Adorama Inc., Adorama Shipping, Inc., Charles Dilkes, Charles Vincent, Edwin DeVia, and Yosef Leaf used wires and checks to pay each other for the goods that were stolen from EarthCam.").

EarthCam's money laundering allegation suffers from a similar defect. For example, the SATPC alleges: "B&H Foto & Electronics Corp., BH Photo Video Inc, Adorama Camera, Inc., Adorama Inc., Adorama Shipping, Inc., Charles Dilkes, Charles Vincent, Edwin DeVia, [and] Yosef Leaf would transport and receive stolen money in violation of 18 U.S.C. §§ 2314 and 2315." *Id.* ¶ 206. Once again, these allegations are conclusory and have no basis in any facts alleged in the SATPC. They also inappropriately group the parties together without clearly articulating who did what. Because EarthCam has not properly alleged the required predicate acts, its RICO claim fails.

The RICO claim is deficient in other regards, as well. To be a "pattern," predicate acts must "amount to or pose a threat of continued criminal activity." *One World, LLC v. Onoufriadis*, 2021 WL 4452070, at *2 (2d Cir. Sept. 29, 2021). The "continuity" required may be "closed ended" or "open ended." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241–42 (1989).

11

Regardless, under either theory, courts in this circuit "have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirements of a closed or open pattern of continuity." *Sehgal v. Aggarwal*, 2021 WL 3617479, at *4 (E.D.N.Y. Aug. 16, 2021); *see also Black v. Ganieva,* 619 F. Supp. 3d 309, 346 (S.D.N.Y. 2022), *aff'd*, No. 22-1524, 2023 WL 2317173 (2d Cir. Mar. 2, 2023) ("RICO caselaw disfavors finding continuity where the alleged scheme targeted few victims . . . ."). EarthCam alleges the purported scheme targeted EarthCam, the general public, and government agencies. SATPC ¶¶ 1, 47. But, setting aside the wholly conclusory allegations in the SATPC, the SATPC at most alleges a scheme that targeted EarthCam only and had a single purpose: stealing cameras from EarthCam's inventory. As a result, EarthCam has not alleged a "pattern" of racketeering activity.

Accordingly, Count One of the SATPC is dismissed for failure to state a claim.[6]

**B. Count Two – Conspiracy to Violate RICO**

Count Two alleges conspiracy to violate RICO in violation of 18 U.S.C. § 1962(d). SATPC ¶¶ 255–286. "[W]here a substantive RICO claim is deficient, a RICO conspiracy claim cannot stand." *Zamora v. JPMorgan Chase Bank, N.A.*, No. 14-CV-05344, 2015 WL 4653234, at *2 (S.D.N.Y. July 31, 2015), *aff'd sub nom., Zamora v. FIT Int'l Grp.*, 834 F. App'x 622 (2d Cir. 2020); *see also Nat'l Grp. Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006) ("Case law in this Circuit confirms that a 1962(d) conspiracy claim must be dismissed where the substantive RICO claim is deficient."). EarthCam's substantive

---

[6] Although neither Dilkes or Vincent have appeared in this action and thus have not moved to dismiss, the Court *sua sponte* dismisses this claim as to them as well, because the SATPC on its face cannot state this claim against them. On a default judgment motion against Dilkes or Vincent, EarthCam would still have to show that the SATPC states a claim; for the reasons discussed above, any such argument would fail.

12

RICO claim is deficient. *See supra* Pt. I(A). Accordingly, Count Two of the SATPC is dismissed for failure to state a claim.[7]

### C. Count Three – Civil Conspiracy

Count Three alleges B&H and the third-party defendants participated in a civil conspiracy aimed at defrauding EarthCam. SATPC ¶¶ 287–296. New York law requires a plaintiff alleging conspiracy to "establish facts which 'support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose.'" *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 386 (S.D.N.Y. 2010) (quoting *Snyder v. Puente De Brooklyn Realty Corp.*, 746 N.Y.S. 2d 517,521 (2002)). Setting aside the SATPC's conclusory allegations, EarthCam has provided no facts supporting the existence of a knowing agreement to cooperate in a fraudulent scheme on the part of the B&H Parties and Adorama Parties.

Regarding the B&H Parties, EarthCam alleges B&H issued invoices for cameras with the same serial numbers as cameras on previous invoices. SATPC ¶ 73. This does not demonstrate an agreement between the B&H Parties and any other party to knowingly participate in a conspiracy. Indeed, if the B&H Parties were part of a conspiracy aimed at defrauding EarthCam, it would be surprising for them to include a smoking gun of the conspiracy's existence in the only documentation B&H regularly sent to EarthCam. Similarly, Leaf's email to Dilkes in

---

[7] The Adorama Parties argued that—if the Court were to dismiss the RICO claims (as it has now done)—the Court should abstain from exercising jurisdiction over the remaining claims against the Adorama Parties under *Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1997). *See* Adorama Mot. at 42–43. The Court will not do so. Abstention is generally disfavored. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012). The Adorama Parties have failed to convincingly argue there are "exceptional" circumstances meriting abstention. And, mindful the "balance heavily weigh[s] in favor of the exercise of jurisdiction," *Moses H. Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983), the six factors identified in *Colorado River* do not support abstention, *see Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001).

March 2023 asking to talk about the EarthCam account does not evince an agreement to cooperate in a fraudulent scheme either. *Id.* ¶ 156. Dilkes was EarthCam's former "Vice President of Supply Chain." *Id.* ¶ 3. So, it would be natural for employees of EarthCam's suppliers (including B&H) to contact him about orders and accounts, and the email itself is facially neutral.

Nor has EarthCam alleged any facts showing an agreement by the Adorama Parties to participate in a conspiracy. The email from an Adorama employee asking whether EarthCam wished to purchase more cameras because both Adorama and B&H would close for Passover does not evince an agreement or concerted activity. *Id.* ¶ 109. On its face, it only shows an awareness that another major player in the same industry is also closed during a Jewish religious holiday. In context, it likely shows good salesmanship as the Adorama employee warns that EarthCam's other supplier will also be closed during Passover, and so EarthCam should place an advance order from Adorama. Even drawing all inferences in favor of EarthCam, the email does not suggest anything nefarious.

The email from another Adorama employee about a "safety stock for us in your NJ warehouse" does not indicate an agreement, either—much less an agreement to accomplish something untoward. *Id.* ¶ 158. EarthCam has provided virtually no details about this email, including its recipient or the meaning of the term "safety stock."

Next, EarthCam's belief that some boxes of merchandise from Adorama were the same boxes Dilkes had previously stolen does not support knowing involvement by Adorama. *Id.* ¶ 117. The claim is highly speculative. And, because some of the boxes Dilkes stole came from Adorama, boxes coming from Adorama would obviously resemble some of the stolen boxes.

14

Finally, EarthCam argues Adorama misrepresented that it could not provide serial numbers for the cameras it sold. *See id.* ¶¶ 82–86. Not so. An Adorama employee simply represented Adorama's practice was not to do so unless a customer requested such information be included on an invoice before making an order. Even if this somehow was a falsehood on the part of this employee, it would not demonstrate an illicit agreement between the Adorama Parties and the B&H Parties. Viewing these facially innocuous events in combination does not help EarthCam's effort to adequately allege B&H and Adorama's participation in the charged conspiracy.

Accordingly, Count Three is dismissed as to the B&H Parties and the Adorama Parties. The count remains viable against DeVia, Dilkes, and Vincent at this stage of the case, as the SATPC adequately alleges the existence of an agreement between them.

### D. Count Four – Violation of the New Jersey RICO Statute

In Count Four, EarthCam alleges a violation of New Jersey's RICO statute. SATPC ¶¶ 297–372. New Jersey RICO is modeled on the federal statute, so case law interpreting the federal statute is equally applicable to New Jersey RICO. *See In re Libor-Based Fin. Instruments Antitrust Litig.*, 2015 WL 4634541, at *89 (S.D.N.Y. Aug. 4, 2015). Claims under New Jersey RICO are also subject to Rule 9(b)'s heightened pleading standard. *Murray v. Cnty. of Hudson*, 2018 WL 3000333, at *7 (D.N.J. June 15, 2018).

EarthCam's New Jersey RICO claim is dismissed against all parties for the same reasons as the federal RICO claim. EarthCam has failed to properly allege predicate acts. It inappropriately lumps the parties together without distinguishing which party did which things, *i.e.*, improper group pleading. *See id.*. It never clearly articulates *who* did *what* and *how*, as Rule 9(b) requires. *Wise*, 2024 WL 1178851, at *5. And it only plausibly alleges a scheme that had single target (EarthCam). *Grant Indus., Inc. v. Isaacman*, 2022 WL 2358422, at *19 (D.N.J.

15

June 30, 2022) ("At most, [the plaintiff] has alleged an isolated scheme against a single victim—not a continuous 'pattern' of racketeering which New Jersey RICO is designed to address and sanction harshly.").[8]

### E. Counts Five Through Seven – Common Law Fraud, Fraudulent Concealment, and Aiding and Abetting Fraud

Counts Five through Seven allege "common law fraud/fraudulent misrepresentation/fraudulent inducement," fraudulent concealment, and aiding and abetting fraud, respectively. SATPC ¶¶ 373–421. Rule 9(b) applies to each count. Accordingly, EarthCam needed to "(1) specify the statements [it] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *MacNaughton*, 67 F.4th at 99. The SATPC comes nowhere close.

Construing the SATPC, EarthCam seemingly alleges the B&H Parties and Adorama Parties represented the cameras they sold were new, but those representations were false because the cameras were, in fact, stolen. As noted above, it is far from obvious that it would be false to describe a camera in original, unopened manufacturer's packaging as "new" simply because it was also stolen. Fatal to EarthCam's case, however, is that the SATPC never clearly articulates who represented the cameras were new or how or when this supposed misrepresentation occurred. *See, e.g.*, SATPC ¶ 142 (stating the Adorama Parties "claimed that the cameras they

---

[8] While EarthCam conclusorily alleges that the scheme also targeted government customers and "the general public" because B&H and Adorama purportedly supplied some of these customers with cameras that were stolen without disclosing that fact, these claims are wholly conclusory and unsupported by any specific allegations.

shipped were new") *id.* ¶ 249 (alleging the "Counterclaim/Third-Party Defendants . . . falsely claim[ed] that the cameras and camera-related merchandise were new").[9]

Other allegations in these counts are overly vague and omit crucial details necessary to satisfy Rule 9(b). *See, e.g.*, SATPC ¶ 379 ("Between 2015 and 2023, B&H and Adorama made misleading statements in invoices and packing slips that mislead EarthCam into believing that it was purchasing new goods but those goods were stolen goods and often EarthCam was charged multiple times for the same goods."); *id.* ¶ 389 ("Dilkes, DeVia, B&H, and Adorama have misled EarthCam by engaging in a scheme to defraud EarthCam of millions of dollars of products.").

At other times, the SATPC levies allegations seemingly spun from whole cloth lacking a basis in any well-pleaded allegations or facts, at least as against the B&H Parties and Adorama Parties. *See, e.g.*, SATPC ¶ 378 ("From 2015 through 2023, Dilkes, B&H, and Adorama made or caused to be made false entries in EarthCam's business records and system."); *id.* ¶ 384 ("Dilkes, B&H, and Adorama misled employees at EarthCam by claiming that the boxes containing cameras and lens [sic] delivered to EarthCam were being placed into Dilkes' car so he could take them to another EarthCam facility."). Finally, these counts all impermissibly group the parties together. *Apace Commc'ns, Ltd.*, 522 F. Supp. 2d at 517 (collecting cases explaining that a plaintiff may not group-plead in alleging fraud).

Because Counts Five through Seven do not satisfy the pleading standard of Rule 9(b) and impermissibly group the parties together, those counts are dismissed as to the B&H Parties and Adorama Parties. Against DeVia, only Counts Five and Six are dismissed. There is no plausible allegation that DeVia made a fraudulent misrepresentation to EarthCam. But the SATPC

---

[9] EarthCam argued the invoices from Adorama stated Adorama sold new cameras. But the invoice excerpts included in the SATPC lack any statement about the cameras' qualities. *See, e.g.*, SATPC ¶ 87.

sufficiently alleges that he aided and abetted Dilkes and Vincent's fraud; accordingly, Count Seven survives as against DeVia.

### F. Count Eight – Breach of Contract

Count Eight of the SATPC alleges breach of contract against B&H, B&H Photo, and the Adorama Parties. SATPC ¶¶ 422–56. EarthCam alleges its purchase orders to both entities incorporated EarthCam's terms and conditions, and those terms and conditions specified EarthCam purchases new goods, only. The B&H Parties and Adorama Parties violated those terms and conditions, EarthCam alleges, by supplying EarthCam with stolen cameras. Additionally, while EarthCam disputes the enforceability of the Sales Agreement, it argues B&H and B&H Photo overcharged EarthCam in violation of the agreement's pricing terms. *Id.* ¶¶ 428–30.

The Adorama Parties move to dismiss this count on the ground that EarthCam has not identified a particular binding contract. Adorama Mot. at 35. This argument fails because, as alleged, EarthCam's purchase orders to the Adorama Parties constituted an offer. By sending EarthCam the cameras requested in the purchase orders, Adorama accepted EarthCam's offer and formed binding contracts. *See in re Chateaugay Corp.*, 130 B.R. 162, 163 (S.D.NY. 1991) (recognizing that purchase orders formed binding contracts); *CareandWear II, Inc. v. Nexcha L.L.C.*, 581 F. Supp. 3d 553, 557 (S.D.N.Y. 2022) (stating that purchase orders can create a contract or confirm the existence of a contract).

Regarding B&H and B&H Photo, the Court will dismiss Count Eight against B&H Photo, only, because B&H Photo did not receive purchase orders from EarthCam and did not sign the Sales Agreement. But the Court denies the motion to dismiss as it concerns B&H. Drawing all inferences in EarthCam's favor, EarthCam can state a claim for breach of contract

18

given its allegations that B&H repeatedly sold it the same cameras, at pricing that did not reflect their true provenance.

### G. Count Nine – Breach of the Duty of Good Faith and Fair Dealing

In Count Nine, EarthCam alleges the B&H Parties and Adorama Parties breached the duty of good faith and fair dealing incorporated in "[t]he agreements at issue herein . . . by withholding from EarthCam benefits that EarthCam was entitled to under the agreements and by exercising contractual rights for an illegitimate purpose and for their own personal gain." *Id.* ¶¶ 458, 464.

The Court will dismiss this count because it is duplicative of the breach of contract claim. Every contract contains an implied duty of good faith. *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). A party who breaches that duty thus breaches the contract. *Id.* "Accordingly, a party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim." *Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008). EarthCam's claim for breach of the implied covenant relies on the same factual allegations as its breach of contract claim. Therefore, the Court will dismiss the implied covenant claim against the B&H Parties and the Adorama Parties. *Id.*; *see also ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997) ("A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.").

### H. Count Eleven – Violation of the New Jersey Consumer Fraud Act

Count Eleven alleges violations of the New Jersey Consumer Fraud Act ("NJCFA"). SATPC ¶¶ 472–91. The NJCFA protects against "fraudulent practices in the marketplace." *Thiedemann v. Mercedes-Benz U.S.A., LLC*, 872 A.2d 783, 791 (N.J. 2005). Stating a NJCFA

claim requires a plaintiff to allege "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011). To plead an "ascertainable loss," a plaintiff can show a purchased good was structurally deficient, "worthless," or lacked a promised feature. *See DiCicco v. PVH Corp.*, No. 19-CV-11092 (ER), 2020 WL 5237250, at *5 (S.D.N.Y. Sept. 2, 2020); *Robery v. PVH Corp.*, 495 F. Supp. 3d 311, 318 (S.D.N.Y. 2020). A plaintiff must also meet the pleading requirements of Rule 9(b). *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 (D.N.J. 2011).

In the SATPC, EarthCam alleges the B&H Parties and Adorama Parties are sellers of goods who employed "fraudulent, unconscionable commercial practices as a means by which to entice EarthCam to do business with them." SATPC ¶ 476. It also alleges "Counterclaim/ Third-Party Defendants even sold . . . cameras, lenses, and other products to the general public and/or governmental agencies by falsely representing that they were new and directly purchased from the manufacturers." *Id.* ¶ 480. And it alleges the cameras were stolen and thus "worth substantially less than the price of a new camera, which" the B&H Parties and Adorama Parties "nonetheless charged to [sic] EarthCam for the stolen cameras and camera-related merchandise." *Id.* ¶ 482. EarthCam suffered a loss, it alleges, because "it paid the B&H Photo Counterclaim/Third-Party Defendants, [sic] and the Adorama Third-Party Defendants multiple times for the same camera and for unnecessary products." *Id.* ¶ 488.

EarthCam's NJCFA claim fails because, once again, EarthCam's allegations fall short of Rule 9(b)'s requirements. EarthCam never identifies the circumstances surrounding the "false representation" predicating its NJCFA claim. As with other parts of the SATPC, EarthCam also

impermissibly groups the parties together, further complicating the Court's efforts at trying to determine *who* EarthCam alleges did *what* and *how*.

Setting aside these failings, EarthCam seemingly also fails to properly allege an "ascertainable loss." Its purported loss was the money it spent purchasing the same cameras multiple times. But that loss does not derive from structural deficiencies or missing attributes from the cameras, as case law interpreting the NJCFA seems to require. *See DiCicco*, 2020 WL 5237250, at *5 (holding an ascertainable loss does not occur "whenever a false statement by the seller causes a customer to pay money to the seller which they would not otherwise have paid").

Accordingly, both because the pleadings do not satisfy Rule 9(b) and because EarthCam has not adequately alleged an "ascertainable loss," Count Eleven of the SATPC is dismissed for failure to state a claim.

## I.  Count Twelve – Conversion

In Count Twelve, EarthCam alleges conversion because the B&H Parties and Adorama Parties received goods that belonged to EarthCam and sought "funds from EarthCam for goods that were already sold to EarthCam." *Id.* ¶ 500. To state a claim for conversion, a plaintiff must allege "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 183 – 84 (S.D.N.Y. 2014). If a defendant's original possession of property was lawful, "a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 370 (S.D.N.Y. 2014); *see Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993).

21

The B&H Parties argue the conversion claim fails because EarthCam never alleges it asked for the return of its property. B&H Mot. at 36. That argument holds no water because, as alleged, the B&H Parties were retaining stolen property, therefore their possession of "stolen" cameras was not lawful, and EarthCam did not need to demand their return. *Polanco*, 23 F. Supp. 3d at 370. The Adorama Parties, meanwhile, argue EarthCam has not sufficiently identified the property it alleges was converted. *See* Adorama Mot. at 38. But the SATPC clearly refers to the cameras that EarthCam purchased from the B&H Parties and Adorama Parties. Accordingly, the Court denies the motions to dismiss Count Twelve.

### J. Count Thirteen – Unjust Enrichment

In Count Thirteen, EarthCam alleges the B&H Parties and Adorama Parties were unjustly enriched at EarthCam's expense by selling it the same cameras multiple times. *See* SAPTC ¶¶ 510–21. Additionally, EarthCam alleges "[t]here is a dispute between the parties as to whether there is an enforceable contract or agreement between EarthCam, B&H Foto & Electronics Corp., [and] BH Photo Video Inc[.]" SATPC ¶ 511. And it alleges that, to the extent the other parties' actions do not constitute breach of contract, "they have been unjustly enriched in the amount of not less than Thirteen Million Dollars . . . by receiving goods, cameras, lenses, and monies, and neither paying EarthCam for them nor returning them to EarthCam." *Id.* ¶ 518.

Prevailing on a claim of unjust enrichment in New York requires a plaintiff to allege "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001). Because unjust enrichment is a quasi-contractual claim, it "ordinarily can be maintained only in the absence of a valid, enforceable contract." *Ohio Players, Inc. v. Polygram Records, Inc.*, No. 99-CV-00033, 2000 WL 1616999, at *4 (S.D.N.Y. Oct. 27, 2000). But a

plaintiff may plead unjust enrichment in the alternative to a breach of contract claim where a plaintiff disputes the enforceability of an applicable contract. *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09-CV-04664 (RJS), 2010 WL 3529237, at *7 (S.D.N.Y. Aug. 24, 2010).

The B&H Parties argue EarthCam makes "no specific allegations as to how Leaf benefitted at EarthCam's expense," so the claim should be dismissed against him. B&H Mot. at 37. They also argue EarthCam has not alleged it maintained a business relationship with B&H Photo, necessitating the dismissal of this count against B&H Photo, as well. *Id.* Lastly, the B&H Parties argue, to the extent EarthCam alleges B&H benefitted from selling stolen cameras, that transaction falls within the scope of the Sales Agreement and therefore "cannot form the basis of a quasi-contractual claim." *Id.* at 38. The Adorama Parties argue the unjust enrichment claim fails because it relies on the same allegations as EarthCam's breach of contract claim. Adorama Mot. at 40.

The Court will dismiss this count as against Leaf, B&H Photo, and the Adorama Parties. There is no allegation that Leaf was unjustly enriched. Next, even assuming B&H sold EarthCam stolen cameras, EarthCam does not explain how this conduct enriched B&H Photo. And, as the Adorama Parties argue, EarthCam's unjust enrichment claim against the Adorama Parties is duplicative of its breach of contract claim, therefore must be dismissed.[10] Nevertheless, the Court will not dismiss the count against B&H. Although the B&H Parties argue EarthCam's unjust enrichment claim falls within the scope of the Sales Agreement, the

---

[10] A plaintiff may plead unjust enrichment in the alternative to breach of contract only if there is a bona fide dispute about an applicable contract's validity. *Network Enters., Inc.*, 2010 WL 52392337, at *7. Crucially, neither EarthCam nor the Adorama Parties question the validity of the purchase orders EarthCam sent to the Adorama Parties. The SATPC includes no language challenging the validity of those purchase orders. And, in their motion, the Adorama Parties challenged the SATPC's breach of contract claim by arguing EarthCam failed to identify the precise contracts the Adorama Parties allegedly breached. Adorama Mot. at 35. But this argument challenges the sufficiency of the pleadings, not the validity of the contracts.

B&H Parties ignore that EarthCam disputes whether the Sales Agreement is enforceable. Hence, EarthCam properly pleads unjust enrichment as an alternative theory of recovery against B&H. *Network Enters., Inc.*, 2010 WL 52392337, at *7.[11]

### K. Count Fourteen – Replevin

In Count Fourteen, EarthCam seeks replevin. SATPC ¶¶ 522–35. This count is dismissed because EarthCam seeks only damages and not the return of property. *M & D Sportswear, Inc. v. PRL U.S.A. Holdings, Inc.*, 2002 WL 31548495, at *5 (S.D.N.Y. Nov. 14, 2002); *Steinberg v. Zebrasky*, 2011 WL 2565498, at *6 (S.D.N.Y. June 14, 2011).

### L. Count Fifteen – Violation of the New York General Business Law

In Count Fifteen, EarthCam alleges violation of New York General Business Law § 349(a). SATPC ¶¶ 536–547. Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in this state." N.Y. GEN. BUS. L. § 349. Stating a claim requires a plaintiff to allege "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). To show "consumer-oriented conduct," a plaintiff must allege "the acts or practice complained of have a broader impact on consumers at large." *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995)). "Where the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349." *Gucci Am., Inc. v. Duty Free, Ltd.*, 277 F. Supp. 2d

---

[11] Although not briefed by the parties, the unjust enrichment claims sound in fraud and therefore would need to satisfy the pleading standard of Rule 9(b). *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023). The Court does not consider whether EarthCam has met the pleading requirements of Rule 9(b) in pleading unjust enrichment.

269, 274 (S.D.NY. 2003); *see also In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 613 (S.D.N.Y. 2005) (determining medical providers could not state a claim under § 349 after defendant misrepresented the safety of a drug because "the nature of this marketing effort—communications from one sophisticated business to another—was quite different from that of any promotion aimed directly at diabetes patients").

EarthCam has failed to plausibly allege consumer-oriented conduct. Although it, in a conclusory fashion, alleges B&H and the third-party defendants sold stolen cameras to the general public and Government agencies, there are no non-speculative allegations in support of that contention. Setting aside any conclusory allegations in the SATPC, what remains are allegations of harm affecting EarthCam and its business, only. Accordingly, EarthCam cannot state a claim under Section 349, and Count Fifteen must be dismissed. *Gucci Am., Inc.*, 277 F. Supp. 2d at 274; *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d at 613.

## III.    JOINDER OF THE ADORAMA PARTIES WAS IMPROPER

In light of the rulings above, only breach of contract and conversion claims remain against the Adorama Parties. Pursuant to the Court's authority under Federal Rule of Civil Procedure 21 to drop parties and claims from an action, the Court is inclined to dismiss the Adorama Parties from this case.

The Federal Rules of Civil Procedure provide three avenues for a litigant to join additional parties to a lawsuit. First, Rule 14 codifies the common law procedures for impleading a third-party defendant and allows a litigant to file a third-party complaint against a "nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). It applies "only in cases where the third party's liability [is] in some way derivative of the outcome of the main claim." *Arch Ins. Co. v. Harleysville Worcester Ins. Co.*, 56 F. Supp. 3d 576, 583–84 (S.D.N.Y. 2014) (quoting *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749,

25

751 (5th Cir. 1967)); *see also* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1446 (3d Ed.) ("The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory."). Second, Rule 19 necessitates the joinder of required parties without whom the Court cannot afford full relief. *See* Fed. R. Civ. P. 19. Third and last, Rule 20 governs "permissive joinders" and permits the joinder of additional defendants when: (1) "any right to relief is asserted against them jointly, severally, or in the alternative arising from the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law of fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(2). Even if these criteria are met, however, a district court retains discretion to deny a motion to join a party under Rule 20. *In re Amla Litig.*, No. 16-CV-06593 (JSR), 2017 WL 3896378, at *2 (S.D.N.Y. Aug. 22, 2017).

In the event of misjoinder, Rule 21 vests the court with the authority to drop a claim or a party from a lawsuit. *See* Fed. R. Civ. P. 21. "The court also has discretion to drop a party for any just reason, even if the claims are properly joined." *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019); *see also Anwar v. Fairfield Greenwich Ltd.*, 118 F. Supp. 3d 591, 618–19 (S.D.N.Y.) ("While the rule is labeled 'misjoinder of parties,' its application is not limited to instances of misjoinder. Its scope is broader, affording courts discretion to shape litigation in the interests of efficiency and justice.").

The Adorama Parties' joinder was improper under Rule 14 because EarthCam does not plead a theory of derivative liability against them. Instead, EarthCam asserts standalone claims of liability against the Adorama Parties that do not hinge on EarthCam's potential liability to B&H for breach of contract. Indeed, the amount of damages EarthCam seeks—$13 million—is

orders of magnitude greater than the damages B&H seeks in this action or Adorama seeks in the Adorama Action.[12]

Next, the Adorama Parties' joinder was not "necessary" under Rule 19. The Court can award full relief on B&H's claim for breach of contract and EarthCam's counterclaims of breach of contract, unjust enrichment, and conversion without the Adorama Parties' participation in this lawsuit.

That leaves Rule 20. EarthCam has not briefed whether the pre-requisites for EarthCam to add the Adorama Parties to this lawsuit are met . Nevertheless, even assuming the prerequisites are met, their permissive joinder should be denied. *Next Phase Distribution, Inc. v. John Does 1–27*, 284 F.R.D. 165, 168 (S.D.N.Y. 2012) ("Even if the requirements of permissive joinder are met, courts maintain the discretion to sever defendants . . . ."). "The purpose of Rule 20 is to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits." *Olshan Frome Wolosky LLP v. Comm. to Restore Nymox S'holder Value Inc.*, No. 24-CV-02134 (ALC) (SLC), 2025 WL 880545, at *7 (S.D.N.Y. Mar. 21, 2025). And "[j]oinder should be used when it is convenient and enhances the efficiency of litigation but it need not be used when it is unhelpful." *SBO Pictures, Inc. v. Does 1–20*, No. 12-CV-03925, 2012 WL 2304253, at *2 (S.D.N.Y. June 18, 2012).

In light of the dismissal of all claims alleging concerted action between the B&H Parties and the Adorama Parties, permissive joinder of the Adorama Parties does not promote efficiency or convenience in this matter. Instead, it unduly complicates this case by requiring the Court to examine and resolve unrelated claims against unrelated parties. Furthermore, the Adorama

---

[12] Impleader is proper against Dilkes, Vincent, and DeVia on a theory of derivative liability given EarthCam's allegations they fraudulently placed the purchase orders that precipitated this breach of contract lawsuit.

27

Parties' presence in this lawsuit will only delay its resolution. After resolving this motion, the Adorama Parties would answer the SATPC, at which point they may decide to raise their own breach of contract counterclaims, potentially prompting yet more motion practice that could yet again delay discovery. The necessary discovery will also expand in both scope and time given the presence of the Adorama Parties.

Additionally, joinder of the Adorama Parties substantially hampers judicial economy. This is true not only because it introduces new parties and claims to this case, but also because any resources devoted to resolving claims by or against the Adorama Parties are necessarily duplicative of the state court's efforts in the pending Adorama Action. Now that the Court has narrowed the remaining claims against the Adorama Parties to breach of contract and conversion, EarthCam's claims against the Adorama Parties in this lawsuit are also virtually identical to its counterclaims in the Adorama Action.

Because joinder of the Adorama Parties overly complicates this matter, threatens to delay the resolution of this lawsuit, and hampers judicial economy, the Court is inclined to exercise its discretion under Rule 21 and dismiss the remaining claims against the Adorama Parties. Nevertheless, the Court will give EarthCam an opportunity to respond and present argument on this issue first.

**CONCLUSION**

For the foregoing reasons, the B&H Parties' motion to dismiss is GRANTED IN PART and DENIED IN PART; DeVia's motion is GRANTED IN PART and DENIED IN PART; and the Adorama Parties' motion to dismiss is GRANTED IN PART and DENIED IN PART. For clarity, the claims that remain are Count Three (against Dilkes, Vincent, and DeVia); Count Five (against Dilkes and Vincent); Count Six (against Dilkes and Vincent); Count Seven (against

28

Dilkes, Vincent, and DeVia); Count Eight (against B&H, the Adorama Parties, Dilkes, and Vincent); Count Ten (against Dilkes and Vincent);  Count Twelve (against the B&H Parties, the Adorama Parties, Dilkes, Vincent, and DeVia); and Count Thirteen (against B&H, Dilkes, Vincent, and DeVia).  All other counts are DISMISSED.  The Clerk of Court is respectfully directed to terminate Dkt. Nos. 99, 100, 101, 108, and 111.

It is further ORDERED that, on or before **April 10, 2026**, EarthCam file a letter not to exceed ten (10) pages addressing whether, in light of the above, the Court should dismiss the Adorama Parties from this lawsuit under Rule 21.  The Adorama Parties may file a responsive letter on or before **April 17, 2026**.

Dated: March 26, 2026
     New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge